**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM A. WHITE, | No. 3:20-CV-00291 |
| Plaintiff, | (Chief Judge Brann) |
| v. | (Magistrate Judge Carlson) |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### SEPTEMBER 28, 2021

Plaintiff William A. White filed the instant action under the Federal Tort Claims Act (FTCA)[1] in the United States District Court for the Southern District of Illinois. Several of his claims were subsequently transferred to this Court, and the matter was referred to a magistrate judge at the summary judgment stage.[2] Upon designation, a magistrate judge may "conduct hearings, including evidentiary hearings, and . . . submit to a judge of the court proposed findings of fact and recommendations."[3] Once filed, this report and recommendation is disseminated to the parties in the case, who then have the opportunity to file written objections.[4]

---

[1]   28 U.S.C. §§ 1346, 2671 *et seq.*
[2]   *See* FED. R. CIV. P. 56.
[3]   28 U.S.C. § 636(b)(1)(B).
[4]   28 U.S.C. § 636(b)(1).

On August 3, 2021, Magistrate Judge Martin C. Carlson issued a thorough report and recommendation,[5] recommending that the United States' motion for summary judgment[6] be granted in its entirety and White's motion for summary judgment[7] be denied.  Magistrate Judge Carlson also recommended that White's pending motion[8] for an extension of time to supplement the Rule 56 record be denied.

White filed objections to the report and recommendation on August 27, 2021,[9] to which Defendant responded on September 2, 2021.[10]  When objections are timely filed, the District Court must conduct a de novo review of those portions of the report to which objections are made.[11]  Although the standard of review for objections is de novo, the extent of review lies within the discretion of the District Court, and the Court may otherwise rely on the recommendations of the magistrate judge to the extent that it deems proper.[12]  For portions of the report and recommendation to which no objection is made, the Court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in

---

[5]   Doc. 175.
[6]   Doc. 135.
[7]   Doc. 162.
[8]   Doc. 173.
[9]   Doc. 177.
[10]   Doc. 179.
[11]   28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).
[12]   *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000) (*citing United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

order to accept the recommendation."[13]  Regardless of whether timely objections are made by a party, the District Court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.[14]

Because this discussion is intended solely for the parties, the Court will not restate the facts, but will instead adopt the recitation of facts as set forth by the magistrate judge and will provide additional facts and procedural history when necessary.  A de novo review has been conducted.  The Court will accept in part Magistrate Judge Carlson's recommendations.

At the outset, the Court must clarify the scope of the claims that are pending in the Middle District of Pennsylvania.[15]  When the United States District Court for the Western District of Virginia transferred several of White's claims to this Court under 28 U.S.C. § 1404(a), its transfer order[16] was somewhat ambiguous with respect to Counts 37 and 38 of White's Second Amended Complaint.[17]

Counts 37 and 38, like Counts 41 and 42, contain allegations that involve federal actors located in different districts of the United States.  Counts 37 and 38—which assert claims for intentional infliction of emotional distress (IIED) and

---

[13]  FED. R. CIV. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (*citing Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every report and recommendation)).

[14]  28 U.S.C. § 636(b)(1); Local Rule 72.31.

[15]  This case has complicated procedural history.  *See generally* Doc. 88.

[16]  Doc. 88.

[17]  Doc. 49.

negligent infliction of emotional distress (NIED), respectively—involve alleged tortious conduct that occurred at Federal Transfer Center (FTC) Oklahoma City (located in the Western District of Oklahoma) as well as at USP Canaan (located in the Middle District of Pennsylvania).[18]  Counts 41 and 42—also respectively alleging IIED and NIED—involve alleged tortious conduct that occurred at FCI Loretto (situated in the Western District of Pennsylvania) as well as USP Canaan.[19]  For reasons unknown, Counts 41 and 42 were subdivided into 41(a) and (b) and 42(a) and (b) to reflect that White's allegations in those counts concerned conduct occurring in different federal districts, but Counts 37 and 38 were not similarly bifurcated.  This is true despite the chart in the transfer order intimating that, as to Counts 37 and 38, only the IIED and NIED claims involving "USP Canaan, Dec. 29, 2014 to Jan. 9, 2015" were transferred to this Court.[20]  Thus, it appears that the entirety of Counts 37 and 38 were transferred to this Court, despite portions of the alleged tortious conduct occurring in the Western District of Oklahoma.[21]

The FTCA contains its own venue provision, which states that "[a]ny civil action on a tort claim against the United States under subsection (b) of section

---

[18]  *See* Doc. 49 ¶¶ 508-34.

[19]  *See id.* ¶¶ 558-84.

[20]  *See* Doc. 88 at 2.  There is no indication that any parts of Counts 37 and 38 were retained by the Western District of Virginia or transferred to the Western District of Oklahoma.

[21]  White agrees, asserting that "Counts 37 and 38 as to FTC Oklahoma City are still before this Court."  Doc. 155 ¶ 12; *see also* Doc. 162 at 3.  The United States appears to contend that only the USP Canaan-related parts of Counts 37 and 38 were transferred to this Court, (*see* Doc. 179 at 2, 7), but has provided no explanation as to where the other portions of those counts were transferred or currently exist.

1346 of [Title 28 of the United States Code] may be prosecuted *only* in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."[22]  Because the federal district court of White's residence—the Western District of Virginia—has already severed and transferred Counts 37 and 38 to this Court, the only proper venue remaining for his claims regarding his incarceration at FTC Oklahoma City is the Western District of Oklahoma.  Accordingly, the Court will subdivide Counts 37 and 38 into 37(a) and (b) and 38(a) and (b): Counts 37(a) and 38(a) concern the alleged tortious conduct at FTC Oklahoma City and in transit thereto and therefrom; Counts 37(b) and 38(b) concern the alleged tortious conduct at USP Canaan.  The Court will *sua sponte* transfer the improperly venued Counts 37(a) and 38(a) to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C §§ 1402(b) and 1404(a), where they should have been transferred with Counts 47 and 48 initially.[23]

Magistrate Judge Carlson's report does not directly address Counts 37 and 38, which have now been pared down to Counts 37(b) and 38(b).  Nevertheless, they are easily disposed of.  White admits that the allegations in Counts 37(b) and 38(b) regarding his confinement at USP Canaan from December 29, 2014, to January 9, 2015, are inaccurate.[24]  Notably, he concedes that no tortious conduct

---

[22]  28 U.S.C. § 1402(b) (emphasis added).
[23]  *See White v. United States*, 5:20-CV-141-HE, Doc. 88 (W.D. Okla. Feb. 11, 2020).
[24]  *See* Doc. 153-3 (June 10, 2020 letter from White to United States indicating that his former counsel made errors in Second Amended Complaint and that White's incarceration at USP Canaan from December 29, 2014, to January 9, 2015, is not part of the instant FTCA lawsuit);

occurred during his incarceration at USP Canaan during this time.[25]  Because there is no genuine dispute of material fact as to Counts 37(b) and 38(b), the Court will grant the United States' motion for summary judgment on these claims.

Only Counts 41(b) and 42(b) remain.  Count 41(b) asserts intentional infliction of emotional distress for White's confinement at USP Canaan from February 23, 2015, to March 3, 2015.[26]  Count 42(b) alleges negligent infliction of emotional distress for the same period.  As to Count 41(b), Magistrate Judge Carlson determined that White's averments of the conditions of his confinement at USP Canaan fail to rise to the level required by Pennsylvania law to maintain a claim for IIED.  The Court agrees.

Establishing an IIED claim under Pennsylvania law is extraordinarily difficult.[27]  This cause of action is reserved for only the "most egregious

---

Doc. 164 ¶ 37 (indicating that White was not locked down from December 29, 2014, to January 9, 2015, and making no averments of tortious or wrongful conduct during this brief incarceration at USP Canaan).

[25]   *See* Doc. 152 ¶¶ 11-12 (United States' statement of material facts explaining that no tortious conduct occurred at USP Canaan from December 29, 2014, to January 9, 2015); Doc. 160 ¶¶ 12, 13 (admission by White to paragraphs 11 and 12 of United States' statement of material facts).

[26]   Although the Second Amended Complaint includes February 20 to 23 in both Counts 41(b) and 42(b), White makes clear that the allegedly tortious treatment at USP Canaan did not begin until he was placed on lockdown on February 23, 2015.  *See* Doc. 155 ¶ 7 ("[T]he conditions of confinement which I am complaining about here began February 23, 2015[.]").

[27]   The Pennsylvania Supreme Court has not yet explicitly recognized the tort of intentional infliction of emotional distress.  *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000).  The Third Circuit has predicted that the state's high court will ultimately adopt the Restatement (Second) of Torts' formulation.  *Williams v. Guzzardi*, 875 F.2d 46, 50-51 (3d Cir. 1989); *see also Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 558 n.13 (M.D. Pa. 2008) (citing *Taylor*, 754 A.2d at 652).

conduct."[28]  Such conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[29]  This Court cannot conclude that the complained-of conditions—even if true, as the United States admits for purposes of Rule 56 adjudication[30]—are sufficiently egregious to meet Pennsylvania's exacting standards.

White avers that for nine days he was kept in lockdown in USP Canaan in extremely cold temperatures, without the ability to exercise or access the common area, and was served "snack packs" three times a day that consisted of "1 oz peanut butter, 1 oz jelly, 1 oz of bread, and [] 1 oz of crackers, plus a Kool Aid packet."[31] White contends that such conditions violate Bureau-of-Prisons regulations and policies and triggered his post-traumatic stress disorder (PTSD) from prior tortious incarcerations.[32]

While the Court in no way condones conditions of confinement that contravene applicable regulations or policies, White's averments, as a matter of law, do not meet Pennsylvania's demanding requirements for IIED.[33]  White

---

[28]   *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

[29]   *Id.* (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

[30]   *See* Doc. 166 at 7 (citing Doc. 159 at 9, 17, 23).

[31]   Doc. 164 ¶¶ 41-46.

[32]   *Id.* ¶ 47.

[33]   White presses the Court to follow the Western District of Pennsylvania's decision at the motion-to-dismiss stage for several IIED and NIED claims that were transferred to that district. *See, e.g.*, Doc. 155 ¶ 11.  The district court there determined that White's allegations were sufficient to plausibly state claims for IIED and NIED under Pennsylvania law. *See White*

admits that he was not confined in isolation and had adequate bedding and blankets to help protect him from the cold conditions.[34]  He also admits that he was provided three meals a day, although such pre-packaged meals may have contravened BOP policy.  These conditions stand in stark contrast to the much more troubling allegations surrounding his confinement at other federal facilities outside of this district.[35]  In sum, White's averments fall short of describing conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[36]

Even if the Court were to reach the opposite conclusion on this issue, White's IIED claim falters for another reason.  A successful IIED claimant must establish that the tortfeasor *intentionally or recklessly* caused severe emotional distress through outrageous conduct.[37]  White has not proffered any evidence that

---

[34] Doc. 164 ¶¶ 42, 45.

[35] *See, e.g.*, Doc. 163 ¶¶ 14, 26-27; Doc. 165 at 18-19, 25-28 (describing three-month period of extreme sleep deprivation in Florida; period of isolated incarceration in Chicago during the winter with sub-freezing temperatures and no blankets; being housed for over 24 hours in a cell that had overflowed with fecal matter and another that was infested with cockroaches).

[36] *Hoy*, 720 A.2d at 754 (quoting *Buczek*, 531 A.2d at 1125).

[37] *See Daughen v. Fox*, 539 A.2d 858, 863 (Pa. Super. Ct. 1988) ("The requisite intention which one must display for liability to be imposed . . . is knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct*." (internal quotation marks omitted) (quoting *Forster v. Manchester*, 189 A.2d 147, 151 (Pa. 1963))); Restatement (Second) of Torts § 46, comments a, d.

*v. United States*, 3:20-cv-28, Doc. 111 at 11-13 (W.D. Pa. Nov. 9, 2020), *report & recommendation adopted*, Doc. 113 (W.D. Pa. Feb. 25, 2021).  First, the Court notes that the Western District's opinion is neither the law of the case nor binding on this Court.  Second, the facts underlying White's conditions of confinement at FCI Loretto are different than the instant matter.

the federal actors at USP Canaan had the requisite intent to cause him severe emotional distress.

Nor has White established recklessness on the part of the alleged tortfeasors. In contrast to the near torture-like conditions White maintains he endured in other facilities, his conditions at USP Canaan alone do not evince reckless disregard for the potential to cause severe emotional distress.  White himself admits that these conditions triggered underlying PTSD "[b]ecause [he] had been previously subjected to life-threatening cold and been left without food or water[.]"[38]  There is no record evidence that the federal actors at USP Canaan had knowledge of White's prior treatment at other facilities such that they were (or reasonably should have been) substantially certain that the conditions at USP Canaan would inflict severe emotional distress.[39]  White expressly avers that he had "never seen psychology staff at USP-Canaan," including during the period at issue, further establishing that USP Canaan personnel were not aware of his previous treatment and emotional state.[40]  For both of the foregoing reasons, the Court will grant summary judgment in the United States' favor on White's claim of IIED at Count 41(b).

---

[38]  Doc. 164 ¶ 47.

[39]  *See, e.g.*, *Pierce v. Penman*, 515 A.2d 948, 953 (Pa. Super. Ct. 1986) (finding that defendants recklessly caused severe emotional distress because they "were aware of the patient's history of emotional problems" and reasonably should have been "substantially certain that their repeated refusal to provide the patient with her medical records over a period of years would cause her severe emotional distress").

[40]  Doc. 164 ¶ 48.

Lastly, the Court turns to Count 42(b)—negligent infliction of emotional distress. Magistrate Judge Carlson found that White had not adequately proven a physical injury as required for an NIED claim.[41] Pennsylvania courts, however, have indicated that physical manifestations of emotional distress, like PTSD, can satisfy the "physical harm" or "physical injury" requirement of a claim for NIED.[42] And White has adduced expert evidence that he has been diagnosed with PTSD.[43] [44]

The problem for White's negligence claim, however, is causation—specifically, proximate cause. Nothing in the record establishes that White's conditions of confinement at USP Canaan were a "substantial factor" in bringing

---

[41] Doc. 175 at 14-15. Although Magistrate Judge Carlson states that White's case "does not involve the specific scenarios in which Pennsylvania courts have approved a cause of action for" NIED, he subsequently indicates that the United States "arguably" owes a duty of care to White while he is in its custody. *Id.* at 14. Indeed, the United States concedes that White fits into the category for an NIED claimant in which the defendant has a fiduciary duty toward the plaintiff, citing 18 U.S.C. § 4042. *See* Doc. 153 at 7; Doc. 158 ¶ 2; *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197 (Pa. Super. Ct. 2008) (en banc).

[42] *See Evans v. Travelers Ins. Co.*, 226 A.3d 96, 101 (Pa. Super. Ct. 2019) (citing *Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992); *Brown v. Phila. Coll. of Osteopathic Med.*, 674 A.2d 1130, 1137 (Pa. Super. Ct. 1996)); *Cf. Schmidt v. Boardman Co.*, 11 A.3d 924, 958 (Pa. 2011) (Baer, J., concurring) (explaining that physical manifestations of emotional trauma constitute "physical harm" or "physical injury" for strict products liability claim).

[43] *See* Doc. 165 at 24 (report by Dr. Richard M. Samuels diagnosing White with PTSD).

[44] The United States also argues that White has not shown a physical injury for his NIED claim that would satisfy the requirements of the FTCA. *See* Doc. 166 at 8; 28 U.S.C. § 1346(b)(2). This argument was improperly raised for the first time in the United States' reply brief, a practice that implicates waiver. *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017) (citation omitted). Even if properly raised, the argument lacks merit. Because White is pursuing an FTCA claim for physical injury—NIED causing PTSD under Pennsylvania law—White's claim is "subject to the standard immunity waiver of § 1346(b)(1) and may proceed in federal court so long as the injuries . . . would be cognizable under state tort law." *West v. United States*, 729 F. App'x 145, 148 (3d Cir. 2018) (nonprecedential).

about his PTSD.[45]  Dr. Samuels' 2019 report never mentions White's nine-day

incarceration at USP Canaan; rather, the report links White's PTSD to his earlier—

and much more extreme—conditions of confinement in Florida and Chicago.[46]

Likely realizing he lacked proof of an element of NIED, White moved for an

extension of time to obtain a supplemental report from Dr. Samuels.[47]  Magistrate

Judge Carlson recommends denying this motion, reasoning that White has had two

years to supplement this report but has inexplicably waited until summary

judgment proceedings, and that any supplemental report would be futile in

avoiding summary judgment.  White contends that he should be given an

opportunity to supplement his expert report and provides documentary evidence

that his communication with Dr. Samuels has been impeded by various federal

actors.[48]

The Court finds that it would be unfairly prejudicial to deny White's request

for additional time to seek a supplemental report from Dr. Samuels.  This case is at

the Rule 56 stage and should be decided on the merits.  White has shown that he

has been attempting to obtain supplemental evidence from Dr. Samuels but has

been stymied by communication issues.  Moreover, the United States has not

---

[45]  *See Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 2005) ("Where a jury could reasonably believe that a defendant's actions were a substantial factor in bringing about the harm, the fact that there is a concurring cause does not relieve the defendant of liability." (citation omitted)).
[46]  Doc. 165 at 18-19, 25-28.
[47]  Doc. 173.
[48]  *See* Docs. 173, 174.

identified any prejudice that it would suffer if White were permitted to provide supplemental expert evidence.  Hence, the Court will grant White's motion for an extension of time to supplement Dr. Samuels' report.

One final matter must be addressed.  White previously moved to reinstate his claims against the United States Marshals Service (USMS) following a favorable ruling from the United States Court of Appeals for the Seventh Circuit.[49]  This Court summarily denied White's motion, but in doing so may have inartfully explained its rationale.[50]  The Court clarified its denial of White's motion to reinstate in a subsequent order dated October 8, 2020.[51]  In that order, the Court reaffirmed that the only claims transferred to this Court were the FTCA claims against the United States, those claims were still pending, and thus there were no "dismissed" claims to reinstate.[52]  To the extent that White believes his previously dismissed claims against the USMS should be reinstated, he should seek such relief from the court that made that decision in the first instance.[53]  Or, if that avenue is foreclosed, White should seek relief from the court or courts where such USMS claims are properly venued pursuant to the Section 1402(b) of Title 28 of the United States Code.

---

[49]  Doc. 102 (citing *Censke v. United States*, 947 F.3d 488 (7th Cir. 2020)).

[50]  *See* Doc. 104.

[51]  Doc. 120.

[52]  *Id.* at 1 n.5.

[53]  It appears that White has filed just such a motion in the Southern District of Illinois.  *See White v. United States*, 3:17-cv-683, Doc. 100 (S.D. Ill. Dec. 8, 2020).

**AND NOW, IT IS HEREBY ORDERED** that:

1.  Magistrate Judge Carlson's August 3, 2021 Report and Recommendation, Doc. 175, is **ADOPTED in part**, as more fully explained above.

2.  Counts 37 and 38 of the Second Amended Complaint, Doc. 49, shall be subdivided into Counts 37(a) and (b) and Counts 38(a) and (b).

3.  Counts 37(a) and 38(a), which involve alleged tortious conduct at Federal Transfer Center Oklahoma City and in transit thereto and therefrom, shall be TRANSFERRED to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1402(b) and 28 U.S.C. § 1404(a).

4.  The United States' motion for summary judgment, Doc. 135, is **GRANTED** in part and **DENIED** in part, as follows:

    a.  Summary judgment is **GRANTED** in the United States' favor as to Counts 37(b), 38(b), and 41(b).

    b.  Summary judgment is **DENIED** as to Count 42(b).

5.  Entry of judgment in accordance with the above paragraph is DEFERRED pending disposition of the remaining claim in this case.

6.  White's motion for summary judgment, Doc. 162, is **DENIED**.

7.  White's motion to supplement summary judgment proceedings, Doc. 176, is **DENIED**, as the substance of the motion and the relief sought are unrelated to the claims pending in the Middle District of Pennsylvania.

8.  White shall have until <u>November 16, 2021</u>, to supplement the Rule 56 record with evidence to support his sole remaining claim of negligent infliction of emotional distress—Count 42(b).

9.    Either party, if desired, may renew their motion under Federal Rule of Civil Procedure 56 regarding Count 42(b) after the date provided in paragraph 8.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge