# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM A. WHITE, | No. 3:20-CV-00291 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## MEMORANDUM OPINION

### MARCH 4, 2025

Plaintiff William A. White filed the instant action under the Federal Tort Claims Act (FTCA)[1] in 2017 in the United States District Court for the Southern District of Illinois.  Several of his FTCA claims were eventually severed and transferred to this Court.  Following an initial round of summary judgment practice, only White's claim of negligent infliction of emotional distress remains.  Both parties conducted additional discovery and have renewed their motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the Court will grant the United States' motion for summary judgment and deny White's competing Rule 56 motion.

---

[1]   28 U.S.C. §§ 1346, 2671 *et seq*.

I.     **FACTUAL BACKGROUND**[2]

White's history of incarceration at multiple different federal facilities is both lengthy and complex. That history need not be fully repeated here, as it has been set forth in detail by other judicial officers.[3] As is relevant to the claims in the case at bar, White was transferred from FCI Loretto to USP Canaan on March 20, 2015, and remained at USP Canaan until March 3, 2015.[4] During this time, White was housed on A-Unit as a "holdover" inmate in administrative detention status pursuant to 28 C.F.R. § 541.23(b).[5]

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Both statements must include "references to the parts of the record that support the statements." *Id.* Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. Docs. 136, 315, 324, 334, 338. To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the Rule 56.1 statements. The Court further notes that White, in his counterstatement of material facts (Doc. 324), improperly includes "additional" facts that are not responsive to the United States' statement of facts. *See* Doc. 324 ¶¶ 10-17. Those additional statements of fact are neither appropriate nor contemplated by Local Rule 56.1 and will therefore be disregarded. *See Farmer v. Decker*, 353 F. Supp. 3d 342, 347 n.1 (M.D. Pa. 2018) (citing *Sash v. Hogsten*, No. 1:07-cv-0475, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (providing that Local Rule 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the nonmoving party how to properly respond to the movant's statement of material facts"); *Dreibelbis v. Young*, No. 06-cv-2055, 2007 WL 4344120, at *2 (M.D. Pa. Dec. 10, 2007)). White, moreover, has filed his own motion for summary judgment, through which he is free to set forth his desired statements of material fact.

[3] *See, e.g.*, Doc. 175 at 2-3 (Carlson, M.J.) (Report & Recommendation); *White v. United States*, No. 3:20-cv-28, 2022 WL 6796081, at *3-6 (W.D. Pa. May 5, 2022) (Report & Recommendation).

[4] Doc. 315 ¶ 1.

[5] *Id.*

At some point during White's brief incarceration as a holdover at USP Canaan, the facility went on "lockdown." White avers that this lockdown began on "about February 23, 2015," and ended on March 2, 2015.[6] The United States counters that prison records reflect that the lockdown did not begin until the evening of February 27, 2015, and ended on the morning of March 2, 2015.[7] Thus, White contends that he was locked down for approximately seven days, while the United States maintains that the lockdown lasted only two and a half days.

The gravamen of White's remaining FTCA claim before this Court involves the conditions he allegedly experienced during this lockdown and their effect on his mental health. White attests that his cell was improperly heated, resulting in ice forming on the toilet "on at least one evening" and "the cold water tap of the sink" freezing at night.[8] He recounts that he "mostly had to remain in bed under blankets due to the cold."[9] White further avers that during the lockdown, he was served "snack packs"—normally reserved for inmates during transport—three times a day that consisted of "1 oz peanut butter, 1 oz jelly, 1 oz of bread, and [] 1 oz of crackers, plus a Kool Aid packet."[10] Finally, White contends that he had no opportunity for out-of-cell exercise during the lockdown.[11]

---

[6] Doc. 136-3 ¶¶ 42, 45 (incorporated by reference in Doc. 334 ¶ 1).
[7] Doc. 329-5 ¶¶ 9-12, 17.
[8] Doc. 136-3 ¶¶ 43-45.
[9] *Id.* ¶ 45.
[10] *Id.* ¶ 46.
[11] Doc. 136-2 ¶ 39.

White contends that these alleged conditions violated multiple regulations and policies and exacerbated his yet-to-be-diagnosed Post-Traumatic Stress Disorder (PTSD), which disorder was primarily caused by extremely harsh conditions of confinement at other federal facilities.[12] According to White, in late 2008, he had been subjected to a four- or five-day period of isolated incarceration in MCC-Chicago during the winter in sub-freezing temperatures without "adequate clothing, bedding, or protection"; he was also housed at the same facility for over 24 hours in a cell that had overflowed with fecal matter and another that was infested with cockroaches; in 2010 and 2011, he was held in extended incarceration in the Special Housing Units at FCI-Beckley and MCC-Chicago and experienced "psychotic symptoms"; and in 2014, he suffered a three-month period of extreme sleep deprivation in Florida that further resulted in being unable to eat or drink for six days.[13]

The parties agree, for purposes of the instant motion, that White was first diagnosed with PTSD by Dr. Eric Ostrov in July 2016.[14] White avers that he takes prescription medication to treat this chronic condition.[15]

---

[12] Doc. 334 ¶ 9; *see also* Doc. 136-2 ¶¶ 14-36; Doc. 136-3 ¶ 47 (attesting that conditions at USP Canaan "triggered" his PTSD "[b]ecause [he] had been previously subjected to life-threatening cold and been left without food or water[.]").

[13] *See* Doc. 136-2 ¶¶ 14-36; Doc. 163 ¶¶ 14, 26-28; Doc. 165 at 18-19, 25-28.

[14] *See* Doc. 334 ¶ 7; Doc. 338 ¶ 6; Doc. 315-3 at 4-5.

[15] Doc. 334 ¶ 10; Doc. 299-1 at 10 (p. 35 of Nov. 17, 2023 deposition of Dr. Justin Ramsdell).

As set forth in detail in this Court's prior Memorandum Opinion and Order,[16] White's FTCA claims in this case have been winnowed to single count—42(b)—alleging negligent infliction of emotional distress against federal actors at USP Canaan.[17]  Following an initial round of summary judgment practice, the Court permitted additional expert discovery and then allowed the parties to renew their Rule 56 motions.  Both parties have once again moved for summary judgment,[18] and those cross-motions are fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[19]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21]

---

[16]  Doc. 181.
[17]  *See id.* at 3-10.
[18]  *See* Docs. 314, 332.
[19]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[20]  FED. R. CIV. P. 56(a).
[21]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[22] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[23] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[24] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[25] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[26]

Courts are permitted to resolve cross-motions for summary judgment concurrently.[27] When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.[28]

---

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[23] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[24] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[25] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[26] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[27] *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008); *see also Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT et al., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).
[28] FED. R. CIV. P. 56; *Lawrence*, 527 F.3d at 310 (quoting *Rains v. Cascade Indus.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## III. DISCUSSION

In its Rule 56 motion, the United States primarily argues that White cannot establish that it breached a duty of care owed to him during the 12 days he was incarcerated in holdover status at USP Canaan.[29] That argument is further refined when the United States maintains, *inter alia*, that there is no record evidence establishing that federal actors at USP Canaan were aware or should have been aware that White's placement in lockdown status "would cause White to experience any mental or emotional distress thereby aggravating his undiagnosed PTSD."[30] Put differently, the United States contends that "[t]here is absolutely no evidence of foreseeability of the alleged harms White complains of because the record is devoid of any evidence that any one at USP Canaan could foresee that a lockdown would subject White to conditions that would cause him emotional distress or trigger his undiagnosed PTSD."[31]

While perhaps inartfully presented, the crux of the United States' argument is correct. Thus, for the reasons that follow, judgment will be granted in the United States' favor on White's sole remaining FTCA claim.

---

[29] *See* Doc. 316 at 6-9.
[30] Doc. 329 at 12;
[31] Doc. 339 at 8, 12. To avoid confusion, when the pagination provided by the parties differs from the CM/ECF electronic pagination, the Court will utilize the CM/ECF electronic pagination.

### A.     Federal Tort Claims Act (FTCA)

"The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment."[32]  The FTCA "does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.  Thus, 'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'"[33]

### B.     Negligent Infliction of Emotional Distress

Under Pennsylvania law, a cause of action for negligent infliction of emotional distress is actionable in circumstances where, *inter alia*, there is a "special relationship" between the plaintiff and defendant, at least insofar as that relationship encompasses "an implied duty to care for the plaintiff's emotional well-being."[34]  Pennsylvania courts have acknowledged that this cause of action "is

---

[32] *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018); *see also* 28 U.S.C. § 1346(b)(1).
[33] *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361-62 (3d Cir. 2001) (quoting *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75 (3d Cir. 1996)).
[34] *See Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 94-95 (Pa. 2011).  The parties agree that there is a fiduciary duty between jailor and prisoner, in particular as set forth in 18 U.S.C. § 4042. *See* Doc. 316 at 7 (citing 18 U.S.C. § 4042; *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976); *Hossic v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987) (holding 18 U.S.C. § 4042 establishes "ordinary diligence" standard of care for prisoner negligence suits under the FTCA)); Doc. 325 ¶ 10.  Neither party, however, delves into the more granular assessment of whether the "special relationship" in this case is one that encompasses "an implied duty of care for the plaintiff's emotional well-being," *Toney*, 36 A.3d at 95, like in the doctor-patient context.  Thus, the Court will assume—without deciding—that such a special relationship exists here.

8

premised upon the Restatement (Second) of Torts § 313[.]"[35]  Section 313 of the Restatement provides, in pertinent part:

> (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>
>  (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
>
>  (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.[36]

Naturally, a plaintiff pursuing a claim for "negligent" infliction of emotional distress must establish that the defendant's conduct was negligent.[37]  Yet demonstrating negligent conduct is only part of the plaintiff's burden.  This distinctive tort, which is often challenging to prove, requires more.  As observed by Commonwealth courts and set forth in the Restatement, liability for negligent infliction of emotional distress only obtains when an actor (a) "should have realized that his conduct involved an *unreasonable risk of causing the distress*" and (b) "*from facts known to him* should have realized that the distress, if it were caused, might result in illness or bodily harm."[38]  Indeed, resultant physical harm is

---

[35] *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 198-99 (Pa. Super. Ct. 2008) (en banc) (citing RESTATEMENT (SECOND) OF TORTS § 313), *aff'd by a divided court*, 36 A.3d 83 (Pa. 2011); *Armstrong v. Paoli Mem. Hosp.*, 633 A.2d 605, 608-09 & n.2 (Pa. Super. Ct. 1993) (same).
[36] *Toney*, 961 A.2d at 198-99 (quoting RESTATEMENT (SECOND) OF TORTS § 313).
[37] *See id.* at 199.
[38] *Id.* at 198-99 (quoting RESTATEMENT (SECOND) OF TORTS § 313(1) (emphasis added)).

required for a claim to be actionable.[39]  And as the Restatement explains, in causing that physical harm, the actor's negligent conduct must violate a duty of care "*designed to protect another from a fright or other emotional disturbance* which the actor should recognize as involving an unreasonable risk of bodily harm[.]"[40]

Stated differently, negligent infliction of emotional distress is a tort of "reasonable foreseeability" that asks whether the injury—*i.e.*, emotional distress resulting in physical harm—is "a reasonably foreseeable result of the defendant's negligence[.]"[41]  The requirement of foreseeability of the peculiar harm is a well-settled matter of Pennsylvania negligence jurisprudence.[42]  Case after case, reaching back to the 1800s, admonishes that the foreseeability of the harm caused to the plaintiff is a fundamental component of negligence law that provides necessary, societal limitations to the scope of the duty owed.[43]

---

[39] *See Armstrong*, 633 A.2d at 609; RESTATEMENT (SECOND) OF TORTS § 436(1).
[40] RESTATEMENT (SECOND) OF TORTS § 436(1) (emphasis added).
[41] *Armstrong*, 633 A.2d at 608-09.
[42] *See Griggs v. BIC Corp.*, 981 F.2d 1429, 1435 (3d Cir. 1992) (noting that foreseeability of the harm to the injured person is an "integral part" of the determination that a duty exists under Pennsylvania negligence law), *overruled in part on other grounds by Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir. 1997).
[43] *See, e.g., Wood v. Pa. R.R. Co.*, 35 A. 699, 701 (Pa. 1896) (observing that injury must be "natural, probable, or foreseeable" consequence of negligent conduct, rather than merely "remotely possible," and noting that "[r]esponsibility does not extend to every consequence which may possibly result from negligence"); *Dahlstrom v. Shrum*, 84 A.2d 289, 292 (Pa. 1951) ("The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act[.]" (citations omitted)); *Thornton v. Weaber*, 112 A.2d 344, 347 (Pa. 1955); *Metts v. Griglak*, 264 A.2d 684, 687 (Pa. 1970); *Farley v. Sley Sys. Garages, Inc.*, 144 A.2d 600, 602 (Pa. Super. Ct. 1958) ("Fundamentally tort law imposes responsibility only for the foreseeable consequences of a

In the case at bar, the dispositive question is whether the harm alleged by White—the exacerbation of underlying, undiagnosed PTSD caused by conditions of confinement at other prisons—was a foreseeable injury such that USP Canaan officials should have "anticipated and foreseen" that this emotional injury would likely result from the lockdown conditions from February 23 to March 2, 2015.[44] The Court answers that question in the negative.

As this Court has previously recognized, White has failed to proffer any evidence that USP Canaan actors knew or should have known about his prior conditions of confinement in Chicago or Florida (or any other facility of incarceration).[45] White's renewed Rule 56 filings do not alter this conclusion or even attempt to do so. Nor is there any evidence that USP Canaan officials had knowledge of White's underlying, yet-to-be diagnosed mental health issues or their causes such that they knew or should have known that the conditions alleged—

---

negligent act . . . ; responsibility is limited to those consequences which are reasonably foreseeable from the nature of the negligent act."); *Ford v. Jeffries*, 379 A.2d 111, 115 (Pa. Super. Ct. 1977) (observing that harm itself must be foreseeable rather than manner of how that harm occurred); *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985) ("The law clearly states . . . that [a defendant] may be held liable only for those risks a person in his position could reasonably have foreseen."); *R.W. v. Manzek*, 838 A.2d 801, 808 (Pa. Super. Ct. 2003) ("The existence of a special relationship . . . does not negate the requirement that the harm is foreseeable."), *rev'd on other grounds*, 888 A.2d 740 (Pa. 2005) (finding that plaintiff had properly alleged negligence and foreseeable harm); *Charlie v. Erie Ins. Exchange*, 100 A.3d 244, 250 (Pa. Super. Ct. 2014) ("The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act[.]" (citation omitted)).

[44] The Court views the facts in a light most favorable to White and thus will utilize White's assertion that he was locked down at USP Canaan for seven, rather than two, days.

[45] *See* Doc. 181 at 9.

cold cell temperatures, "snack pack" meals three times a day, and no out-of-cell recreation during lockdown—would create an unreasonable risk of "triggering" or "exacerbating" White's undiagnosed PTSD, thereby causing emotional distress so severe it would lead to physical injury.[46]

Furthermore, White disputes that he was even asked about his mental health during the medical screening upon arrival to USP Canaan[47] and, more tellingly, has never claimed that he informed *anyone* at USP Canaan that he had PTSD symptoms, psychological issues, mental health problems or symptoms, or otherwise was particularly susceptible to emotional distress from certain conditions of confinement. White, in fact, has not proffered any evidence that he even informed or complained to USP Canaan actors about his conditions of confinement during the seven-day lockdown, much less that he informed those officials that the conditions were likely to exacerbate or trigger his preexisting yet undiagnosed PTSD.[48] Further, White admits that he did not see psychology staff during his brief stay at USP Canaan.[49]

---

[46] *See Toney*, 961 A.2d at 198-99 (quoting RESTATEMENT (SECOND) OF TORTS § 313(1)).
[47] Doc. 315 ¶ 6; Doc. 324 ¶ 6.
[48] *Cf. Pierce v. Penman*, 515 A.2d 948, 953 (Pa. Super. Ct. 1986) (finding that defendants recklessly caused severe emotional distress because they "were aware of the patient's history of emotional problems" and reasonably should have been "substantially certain that their repeated refusal to provide the patient with her medical records over a period of years would cause her severe emotional distress").
[49] Doc. 164 ¶ 48. While White points to this lack of psychological treatment as a violation of BOP policy and evidence of negligence, (*see* Doc. 334 ¶ 5), he never asserts that he requested psychological or mental health treatment while at USP Canaan or tried to inform medical staff

White spends a great deal of time arguing that the BOP's violation of certain agency regulations or policies is evidence that USP Canaan officials were negligent or, alternatively, that those violations establish negligence per se.[50] The fundamental problem with this argument is that White has never asserted a common law negligence or negligence per se claim against the United States with respect to his brief incarceration at USP Canaan. Rather, White accused the United States of *negligent infliction of emotional distress*,[51] which, as explained above, is a unique tort that requires more than just establishing the elements of negligence and contending that the resultant injuries were "serious emotional distress."[52]

Accordingly, even assuming the disputed conditions of confinement at USP Canaan were exactly as White describes them, it was simply not foreseeable to prison officials that their conduct—if negligent—would create an unreasonable risk of causing a prisoner emotional distress so severe that it would result in bodily injury. Although such a unique injury may be "remotely possible," it is not the "natural," "probable," or "foreseeable" consequence of the purportedly negligent conduct which White alleges.[53]

---

(or anyone else) about his mental health problems related to his earlier conditions of confinement.
[50] *See, e.g.*, Doc. 325 ¶¶ 16-17; Doc. 333 ¶¶ 14-16, 21; Doc. 334 ¶¶ 4-5.
[51] White also alleged intentional infliction of emotional distress, but that claim was rejected during the first round of summary judgment practice. *See* Doc. 181 at 6-9 & nn.27-40.
[52] Doc. 334 ¶ 6.
[53] *See Wood*, 35 A. at 701. This is opposed to, for example, hypothermia or frostbite from cold temperatures, weight loss or digestive issues from improper nutrition, and other reasonably foreseeable consequences of the conditions White alleges. *See, e.g.*, *Zanine*, 497 A.2d at 1334

As Pennsylvania law has long held, "[r]esponsibility does not extend to every consequence which may possibly result from negligence."[54] Instead, "[t]he test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act[.]"[55] The existence of a special relationship does not negate this foreseeability requirement.[56] In the present case, White's novel injury—exacerbation of underlying yet undiagnosed PTSD caused by previous (but unknown) conditions of confinement at other prisons—was not one that was reasonably foreseeable to USP Canaan actors. Therefore, liability for negligent infliction of emotional distress does not obtain.[57]

Because White has failed to proffer evidence of an "integral part" of his FTCA claim for negligent infliction of emotional distress, the Court must grant the United States' motion for summary judgment. For the same reasons, White's cross-motion for summary judgment must be denied.

---

(finding that a heart attack suffered by police officer as a result of a motor vehicle chase was not a foreseeable harm that fleeing defendant could have anticipated, and therefore negligence claim could not be established).
[54] *Wood*, 35 A. at 701.
[55] *Dahlstrom*, 84 A.2d at 292.
[56] *Manzek*, 838 A.2d at 808.
[57] *See id.* ("[W]hether a special relationship existed is inapposite if the harm suffered is not foreseeable.").

## IV. CONCLUSION

Based on the foregoing, the Court will grant the United States' motion for summary judgment and deny White's cross-motion for summary judgment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
